Edward Johnson et al., Appellants, v. Lydia Luhman, Appellee.

Gen. No. 10,358.

Opinion filed May 16, 1950.

Released for publication June 5, 1950.

RAPHAEL E. YALDEN, of Rockford, for appellants.

626

LARGE, RENO & ZAHM, of Rockford, and SONNEN-SCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellee; JOHN J. FAISSLER, of Chicago, and RALPH S. ZAHM of Rockford, of counsel.

Mr. JUSTICE DOVE delivered the opinion of the court.

The sufficiency of the complaint in this case by which Edward Johnson, Leatrice Johnson, Richard Johnson, Thomas Johnson and Stephen Johnson, minor children of Vincent Joseph Johnson and Leone C. Johnson, seek to recover damages from the defendant, Lydia Luhman, because she induced and enticed their father, Vincent Joseph Johnson, to leave them, their mother, and their family home and associate with her was sustained by this court in *Johnson v. Luhman,* 330 Ill. App. 598. Following the remandment of the cause by this court, it was redocketed in the trial court. The defendant answered and the issues made by the pleadings were submitted to a jury, resulting in a verdict finding the defendant not guilty. Upon this verdict judgment was rendered, and the plaintiffs appeal.

The complaint was filed on December 11, 1945, and as amended, alleged, among other things, that for more than fifteen years Leone C. Johnson and her husband, Vincent Joseph Johnson, together with their children, the plaintiffs herein, lived together in their home in Rockford; that the defendant was also a resident of Rockford and was a frequent visitor in the home of the plaintiffs; that on August 21, 1945, the defendant induced and enticed said Johnson to leave his home, desert the plaintiffs and their mother and flee to other places where he might associate with and constantly be with the defendant; that during all the time from August 21, 1945, to the time of the filing of this suit, defendant and said Johnson associated together, and, for some months prior to the filing of this suit, the de-

627

fendant and said Johnson have lived in the apartment of the defendant; that from August 21, 1945, to the time the complaint was filed, Johnson was totally absent from his home and family and made no contribution to the support of plaintiffs except as compelled by an order entered in a separate maintenance proceeding instituted against him by his wife.

The answer of the defendant admitted that she had been in the Johnson home upon two occasions but denied substantially all the other allegations of the complaint. The answer averred that for a long period of time prior to the alleged desertion, Vincent Joseph Johnson had been addicted to the use of intoxicating liquors, had neglected his family, had constant quarrels with his wife and had ceased to have any affection for her; that the sole causes for his leaving his home and children were his addiction to intoxicating liquors, his neglect of his family, his quarrels with his wife and his lack of affection for her together with the acts and conduct of his wife toward him; that before and long after this suit was commenced, defendant repeatedly informed Johnson that his attentions to her were unwelcome and that she did everything in her power to reject the attentions which Johnson thrust upon her. The answer then alleged that on April 11, 1945, Leone C. Johnson filed her complaint against her husband for separate maintenance and that thereafter a decree was rendered in said proceeding granting her the custody of the plaintiffs and the right to live separate and apart from her husband. The reply of the plaintiffs admitted the allegations of the answer in regard to the separate maintenance proceeding and alleged that the decree in that proceeding granted Johnson the right to see his minor children at all reasonable and seasonable times.

The evidence discloses that Mr. and Mrs. Johnson were married in 1928. In 1942, Mr. Johnson was as-

sistant purchasing agent, employed by Ingersoll Milling Machine Company, and the defendant, Lydia Luhman, was employed by the Forest City Foundry and they became acquainted. At that time, she did not know Johnson was married but in 1943 learned that he was. Leone C. Johnson, mother of the plaintiffs, testified to a conversation which she had with defendant in July 1943, in which defendant said to her that she, the defendant, was in love with Johnson; that they had gone together to Chicago, Milwaukee and other places and when they were both in Rockford, they lived together in her apartment as man and wife and that she bought the food and drinks and cooked their meals. The details of her evidence need not be recited. The defendant testified and denied many of the statements attributed to her by Mrs. Johnson.

The evidence further discloses that on April 11, 1945, Leone C. Johnson filed in the circuit court of Winnebago county her complaint for separate maintenance against Vincent Joseph Johnson. In this complaint, she alleged that she was living separate and apart from her husband without her fault, and charged that since July 13, 1944, her husband, in disregard of his marriage duties and without excuse or reason, had pursued a morose, hostile and wrongful course of conduct toward her. On October 4, 1945, she filed her amended complaint in which she alleged that after the filing of her original complaint she and her husband agreed on April 20, 1945, to resume their marital relationship and lived together for twenty-seven days thereafter, at which time Johnson again absented himself from his home; that on August 18, 1945, Johnson returned to his home and again lived with his wife and children until August 21, 1945, at which time he again without cause or reason absented himself from his home.

On the day the amended complaint for separate maintenance was filed, a hearing was had, the parties

being represented by counsel, and a decree was rendered finding the allegations of the amended complaint to be true and decreeing that the plaintiff be given the right to live separate and apart from the defendant. The decree awarded the custody of the plaintiffs in the instant proceeding to their mother subject to the right of their father to see his children at all reasonable and seasonable times and directing Johnson to pay his wife $140 per month for the support of herself and children. The decree was approved and filed on November 2, 1945.

During the course of the trial, the plaintiffs in the instant case offered to prove that the defendant and Johnson spent the nights of November 9 and 10, 1945, together, in the apartment of the defendant. The trial court sustained an objection to this offer, and it is insisted by counsel for appellants that this ruling of the trial court was erroneous.

The complaint alleged that the defendant on or about August 21, 1945, induced the father of the plaintiffs to leave his home and desert and neglect his children and that from August 21, 1945, down to the time this suit was filed, which was December 11, 1945, the defendant and Johnson associated together and had been in each other's company constantly and that they lived in the apartment of the defendant in Rockford. These charges were denied by the answer of the defendant. Counsel for appellee argue that the gist of this action is the claim that defendant enticed and induced their father to desert them; that this wrongful act of the defendant was completed on August 21, 1945, when Johnson left home never to return and anything that occurred on November 9 and 10, 1945, was after the completion of the tort and therefore properly excluded.

■ The author of the article on Husband and Wife, 27 Am. Jur. 155, sec. 556, in commenting on actions for

630

alienation of affections, says: "Evidence of improper relations between the plaintiff's spouse and the defendant after a separation of the spouses has been held inadmissible. Such evidence has been held inadmissible, in connection with relations between them prior to such separation, to interpret such previous relations." The author then goes on to say, "However evidence of relations between the plaintiff's spouse and the defendant after the separation of the spouses has been held admissible to show an inducement of the spouse to stay away, the view being taken that such enticement is a tort against the one spouse's right to a possibility of reconciliation with the other spouse." We recognize that the instant action is not one by a wife for the alienation of her husband's affections but involves the relationship of parent and child. We do not find anything in *Fox v. Fuchs,* 241 Ill. App. 242, relied upon by appellee, indicating that this evidence is not competent. The trial court offered to admit this evidence upon proof of any attempted reconciliation after November 2, 1945, but none was made. Recovery in the instant case is not sought because defendant prevented the father of appellants from returning to their home after November 2, 1945. The refusal of the trial court to admit this offered evidence, in view of the record in this case, was not reversible error.

It is next insisted by counsel for appellants that the court erred in permitting appellee to testify to various conversations she had had with Johnson during the years 1942, 1943, 1944 and to and including August 19, 1945 and in permitting a waitress at the Press Club to testify that some seven or eight months prior to November 1945, appellee told the witness that she, appellee, was not to be called to the telephone if Johnson phoned; this witness further testified that Johnson called several times and she informed him that appellee was not there. The objection was that

these conversations were hearsay and outside the presence of appellants. In *Fox v. Fuchs*, 241 Ill. App. 242, 262, the court held such testimony to be grounded on necessity and admissible and on page 262 said: "Testimony of the defendant, or other witnesses as to statements of the alienated husband, showing the state of his affections, his motive or reason for separating from the plaintiff, or the effect of the plaintiff's actions upon him, is admissible." The court also held that declarations of the defendant to the alienated spouse are admissible and said: (p. 264) "The declarations of the defendant should be considered as admissible. Not only should the plaintiff be permitted to introduce testimony as to declarations of the defendant tending to support the allegations to the effect that he has been guilty of alienating the affections of the alienated spouse, but the defendant should also be permitted to put in his own declarations tending to show the contrary." In our opinion, the evidence of the defendant and Evelyn Case, the waitress at the Press Club, was competent and the trial court did not err in overruling appellants' objections thereto.

Appellants next insist that the court erred in refusing to give to the jury the following instructions:

"If you find for the plaintiffs it will be your duty to assess their damages, if any, and in determining said damages it is not necessary that any witness should have expressed an opinion in dollars and cents as to the amount of such damage, but you have the right to take into consideration the shame and mortification of the plaintiffs, if any, the injury to the good names and character of the plaintiffs, if any, the mental anguish, humiliation and suffering of the plaintiffs, if any, and the loss of the companionship, parental care and guidance and financial help, if any, of their said father, if shown by the evidence."

In 27 Am. Jur. 142, it is said: "Generally speaking, a person injured by the wrongful act of another is entitled, in an action to recover damages for injuries caused by such wrongful act, to recover a sum sufficient to compensate him for whatever loss or injury directly and proximately resulted from defendant's wrong. Accordingly, in an alienation of affections suit, the plaintiff's compensatory damages may properly include compensation only for those injuries which are the natural and probable consequences of the defendant's wrongful acts, although he may, in addition thereto, as a general rule, recover exemplary or punitive damages where the defendant's wrong is characterized by wantonness, recklessness or maliciousness. . . . There is, of course, no exact or fixed standard by which damages for alienating the affections of a spouse can be measured. All courts recognize the difficulty, if not the impossibility, of formulating any rule to measure loss of consortium and affections in money, and they recognize that a wide latitude must be allowed the jury for the exercise of judgment."

██ The complaint in this case alleged that the rights of the plaintiffs to the support, maintenance and paternal care of their father have been destroyed and lost and that their family life has been denied them. Notwithstanding the assertion of counsel for appellants, the complaint does not allege that the plaintiffs suffered any shame, mortification, injury to their good names and character, mental anguish, humiliation or suffering. This instruction enumerates these elements of damage, but there is no evidence found in this record tending to prove any of these elements. This instruction, as tendered, permitted the jury to speculate as to appellants' damages, enumerated elements of damage which plaintiffs did not claim they suffered in their pleadings and to support which there was no evidence.

This instruction was properly refused. Furthermore, it might be noted that the jury found the defendant not guilty and thereby had no occasion to consider the question of damages. Appellants' rights were therefore in no way prejudiced by the refusal of the court to give to the jury this instruction.

█ Counsel for appellants also insist that the trial court erred in refusing to give to the jury, at their request, an instruction "that if you believe from the evidence that any witness in this case has knowingly and wilfully sworn falsely on this trial to any matter material to the issues in this case, then you are at liberty to disregard the entire testimony of such witness, except, in so far as it has been corroborated by other credible evidence or by facts and circumstances appearing in evidence in this case." In *People v. Arcabascio,* 395 Ill. 487, 499 and in *People v. Scott,* 401 Ill. 80, 85, it was held that such an instruction should not be given unless the jury are informed what matter is material to the issues. The jury were not so informed in this case, and the instruction was properly refused.

█ It is finally insisted that the court erred in giving to the jury an instruction on behalf of the defendant which recited, among other things, that the plaintiffs could not recover unless the jury found from a preponderance of the evidence that Vincent Johnson deserted or abandoned the plaintiffs and left his home on or about August 21, 1945. The criticism is that in an alienation of affections action the plaintiffs need prove only that the defendant enticed the father away from the plaintiffs and did so wilfully or intentionally and that such action was the controlling cause of the desertion.

The complaint in this case alleged that the father deserted the plaintiffs on August 21, 1945. The proof sustained this allegation. An instruction given the jury on behalf of the plaintiffs told the jury that if

the jury believed from the evidence that the defendant did wantonly and maliciously entice, induce and allure the affections of the plaintiffs' father from the plaintiffs and did thereby cause the said father to desert and neglect the plaintiffs, then the jury should find the defendant guilty and may assess punitive damages against the defendant. In view of this instruction recognizing this fact, the allegations of the complaint and the evidence found in this record, we do not believe the rights of the plaintiffs were prejudiced by the giving of this instruction.

In our opinion there are no errors in this record requiring a reversal of this judgment. The verdict of the jury has been approved by the trial court, and the judgment rendered upon that verdict will be affirmed.

*Judgment affirmed.*